# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| URBANO JIMENEZ,<br><br>    Plaintiff,<br><br>    vs.<br><br>MICHAEL J. ASTRUE,[1]<br>Commissioner of Social Security,<br><br>    Defendant.<br>_____/ | Case No. 06-cv-0527 LJO TAG<br><br>FINDINGS AND RECOMMENDATIONS ON PLAINTIFF'S APPEAL FROM A FINAL ADMINISTRATIVE DECISION (Doc. 1) |

    Plaintiff Urbano Jimenez ("Plaintiff" or "Claimant") seeks judicial review of an administrative decision denying his claims for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 401 et seq., and for supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq. (collectively "disability benefits"). (Doc. 1). Pending before the Court is Plaintiff's appeal from the administrative decision of the Commissioner. Plaintiff filed his complaint on April 29, 2006 (Doc. 1), and his opening brief on January 13, 2007. (Doc. 17). The Commissioner filed his opposition on February 1, 2007. (Doc. 18). Plaintiff did not file a reply brief.

## JURISDICTION

    On November 1, 2002, Claimant filed applications for DIB and SSI alleging disability based on neck pain following treatment for a December 8, 1999 work-related accident which resulted in

---

[1] Michael J. Astrue is substituted for his predecessor, Jo Anne B. Barnhart, as Commissioner of the Social Security Administration. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d)(1).

1  him suffering a broken back.² Claimant's alleged an onset date of December 8, 1999.
2  (Administrative Record ("AR") 70-72, 76, 433-435). His DIB and SSI applications were considered
3  concurrently. (See, e.g., AR 55, 436). Claimant's applications were denied initially and on
4  reconsideration. (AR 38, 49, 55-58, 60-64, 436-437). After timely requesting a hearing, Claimant,
5  his attorney, and an interpreter appeared before Administrative Law Judge ("ALJ") James Ross on
6  September 3, 2004. (AR 65, 438-454). ALJ Ross found that Claimant was not disabled in a written
7  decision dated October 28, 2004. (AR 16-22). The Appeals Council denied Claimant's request for
8  review on May 2, 2005. (AR 6-8). The ALJ's decision, therefore, became the final decision of the
9  Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). The
10 initiation of an appeal in the district court must be commenced within sixty (60) days of the Appeal
11 Council's decision. Id. On March 31, 2006, the Appeals Council granted Claimant's request for an
12 extension of time to file his civil complaint. (AR 5). On March 29, 2006, Plaintiff timely filed this
13 action. (Doc. 1).

**STATEMENT OF FACTS**

15      The relevant facts have been presented in the administrative hearing transcript, the ALJ's
16 decision, and the Plaintiff's and the Commissioner's briefs, and only will be summarized here. To
17 the extent necessary, additional facts will be addressed in this Court's analysis.
18      As an initial matter, Claimant filed a prior application for DIB on January 18, 2001. (AR 32).
19 After his claim was denied initially and on reconsideration, Claimant appeared for an administrative
20 hearing before ALJ Michael J. Haubner on June 13, 2002. (Id.). During that hearing, a vocational
21 expert testified in addition to Claimant, who testified with the assistance of an interpreter, and
22 Claimant's attorney was present. (Id.). On June 28, 2002, ALJ Haubner issued a written decision
23 in which he found that, given his physical limitations, Claimant retained the residual functional
24 capacity ("RFC") to perform light work with some restrictions. (See AR 32-37). After ascertaining
25 that there were jobs that were available in the national economy that Claimant could perform, ALJ
26 ///

---

² Claimant protectively filed his SSI application on October 17, 2002. (AR 432).

2

Haubner concluded that Claimant was not entitled to disability benefits. (Id.). There is no indication that Claimant appealed ALJ Haubner's decision. (See generally AR).

Plaintiff was born on November 9, 1960, making him almost 44 years old at the time of ALJ Ross's October 28, 2004 decision. (AR 70, 433, 442). At the hearing, Plaintiff testified that he attended school in Mexico through the sixth grade. (AR 442). He denied being able to speak basic English or that he previously testified that he spoke English 30% of the time when he worked, claiming that he knew only a little English. (AR 447-448). Regarding his work history, Claimant testified that he last worked in 1999, when he was involved in a work-related accident. (AR 442). Because he was receiving Workers' Compensation from the accident, he was given the opportunity to attend Vocational Rehabilitation, but the course he was sent to was for lawnmower repair, which he physically could not do because it bothered his neck to lift the machines or use the pull-start. (AR 446-447).

As to his daily life activities, Claimant testified that he lives with his wife and their four children, whose ages range between three and nineteen years old. (AR 442). He added that his wife takes their three-year-old son to daycare when she goes to her job working in the fields. (AR 442-443). Claimant reported that he receives $637 every two weeks in disability payments from Workers Compensation, which is more money than he earned in the past, but which, he stated, may end once his case is closed. (AR 448-449, 451). Claimant added that the doctors he saw for his Workers Compensation case did not think he would be able to work again. (AR 451). He also testified that, during the majority of the day, he lies on the floor to avoid hurting his neck. (AR 443). According to Claimant, he watches the news on the television, but does not read or listen to the radio. (AR 444). He testified that he has tried, but is unable to do housework or chores, providing as an example that he attempted to do some light yard work but it bothered his neck. (AR 443-444). Claimant added that he sometimes accompanies his wife when she goes grocery shopping, and he tries to carry the light bags. (Id.). He further stated that he drives approximately thirty minutes over an eight day span of time, but it scares him because he cannot turn his head to look at other moving vehicles due to his pain. (AR 443). Claimant admitted that he had never had an activity that he enjoyed except his job. (AR 445).

With respect to his limitations, Claimant stated that his neck pain is constant, with or without medication, and it interferes with his ability to sit or stand. (AR 446). He added, however, that it improves when he lies flat on the ground. (Id.). Claimant testified that the surgery he underwent on January 14, 2004, did not alleviate the pain and, when confronted with the surgeon's follow-up treatment notes, which reported that Claimant stated he had less pain with neck movement, the improvement actually related to the removal of the lump such that he was able to move his neck again, not any alleviation of the pain, which remained the same. (AR 449-450). Claimant further testified he took pills and received monthly injections in his back for pain. (AR 452). In addition, he started physical therapy in March 2004, which helps while he is undergoing treatment. (AR 453).

Claimant also testified that he suffers from depression, for which he was referred to Dr. Francisco Montalvo. (AR 445). According to Claimant, he takes the prescribed psychotropic medication, which causes no adverse side effects, but he is not sure whether the medicine provides any relief because he still has good and bad days. (Id.). In addition, he testified that he often cannot sleep for more than four hours, if at all, and he does not sleep during the day. (AR 445-446).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. See, 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. See Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005)(quotations and citations omitted); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985); 42 U.S.C. § 405(g). Substantial evidence is more than a mere scintilla, Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as

///

a whole, not just the evidence supporting the decision of the Commissioner. Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (citing Kornock v. Harris, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400, 91 S. Ct. at 1426-1427. If evidence supports more than one rational interpretation, the Court must uphold the decision of the ALJ. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). Moreover, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. Brawner v. Sec'y of Health and Human Servs., 839 F.2d 432, 433 (9th Cir. 1987).

## **RELEVANT LEGAL FRAMEWORK**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

### **Sequential Evaluation Process**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the claimant is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c).

///

If a claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which necessitates that the claimant's impairment be compared with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from doing work performed in the past. If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot perform this work, the fifth and final step in the process determines whether he is able to perform other work in the national economy in view of his age, education and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). See Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971). In terms of the five step sequential evaluation process, the Ninth Circuit has held that "[t]he burden of proof is on the claimant as to steps one to four," while at the same time noting that an ALJ's "*affirmative duty* to assist a claimant to develop the record . . . complicates the allocation of burdens" such that "the ALJ shares the burden at each step." Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999)(italics in original). The initial burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984). At step three, however, the claimant bears the burden to demonstrate that his impairment(s) meet or equal one of the listings, rendering him presumptively disabled. Benten ex rel. Benton v. Barnhart, 331 F.3d 1030, 1034 (9th Cir. 2003). The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. Kail, 722 F.2d at 1498.

# ADMINISTRATIVE FINDINGS[3]

The ALJ indicated that claimant had filed a prior disability application which was denied on June 28, 2002, with a finding that Claimant retained the RFC to perform light work with some restrictions and, accordingly, he was not disabled. (AR 16). The ALJ noted that, under Acquiescence Ruling ("AR") 97-4(9),[4] he was required to apply a presumption of continuing nondisability from June 29, 2002 through the date of his decision unless that Claimant rebutted the presumption with evidence of "changed circumstances." (Id.). ALJ Ross concluded that Claimant failed to demonstrate that his condition had worsened sufficiently to rebut the presumption of continuing nondisability, as discussed further in this document. (Id.; see below).

ALJ Ross found at step one that Plaintiff has not engaged in substantial gainful activity since his alleged onset date of December 8, 1999. (AR 17, 21). At step two, the ALJ determined that Claimant is "status post C5 crush injury and anterior fusion at C4-6," which are severe impairments, and also suffered from depression, which is well-controlled with medication and only minimally affects his ability to work. (AR 17, 21). At step three, the ALJ found that Plaintiff "does not have any impairment or combination of impairments meeting or equaling the criteria under any section of Appendix 1, Subpart P, Regulations No. 4." (AR 17, 21). The ALJ discussed in detail the medical records, opinions, and assessments by Claimant's treating and non-treating physical and mental-health professionals, noting the inconsistencies between them and the contradictions between the records and Claimant's testimony. (See AR 17-21).

After determining that Claimant retained the residual functional capacity ("RFC") to sit, stand, and walk six hours in an eight hour day and to lift and carry ten pounds frequently and twenty pounds occasionally, but that Claimant could not engage in repetitive neck rotations or extensions,

---

[3] The ALJ determined that Plaintiff had worked the requisite period of time to gain insured status for eligibility for DIB benefits at least through the October 28, 2004 date of his written decision. (AR 16).

[4] AR 97-4(9) was adopted in response to Chavez v. Brown, 844 F.2d 691 (9th Cir. 1988), and explains how the holding in Chavez is to be applied, noting that it is applicable only to 9th Circuit cases. See AR 97-4(9), 1997 WL 742748. Acquiescence Rulings "are binding on all components of the Social Security Administration," and accorded deference by a reviewing court. 20 C.F.R. § 402.35(b); McNabb v. Barnhart 340 F.3d 943, 944 (9th Cir. 2003).

the ALJ found that Plaintiff's allegations regarding the limitations of his impairments were not wholly credible when assessed in accordance with Social Security Ruling ("SSR") 96-7p. (AR 21). At step four, the ALJ determined that Plaintiff could not return to his past relevant work, as defined in 20 C.F.R. §§ 404.1565 and 416.965. (AR 21). At step five, the ALJ noted Plaintiff's age, minimal education, and inability to communicate in English, and, using Rule 202.18 of the Medical-Vocational Guidelines as a framework, he concluded that there were a significant number of jobs in the national economy that Plaintiff could perform and, thus, Claimant was not disabled. (AR 21-22). Accordingly, the ALJ determined that Plaintiff was not eligible for DIB or SSI payments. (AR 22).

**ISSUES**

In his opening brief, Plaintiff raises the following alleged errors for consideration:

A.  The ALJ erroneously applied the law regarding a presumption of continuing nondisability;[5]

B.  The ALJ failed to fully consider the mental health record and erroneously applied Workers Compensation assessments to determine Claimant's Residual Functional Capacity;

C.  The ALJ ignored the opinion of treating psychiatrist Dr. Montalvo without providing an adequate explanation; and

D.  The ALJ erroneously found Plaintiff's testimony less then credible.

This Court must uphold the Commissioner's determination that a claimant is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

**DISCUSSION**

**A. Presumption of Continuing Nondisability**

---

[5] Plaintiff presents an issue, in one line, that ALJ Ross did not "properly consider reopening." (Doc. 17, p. 4). He does not further address this alleged error, nor is there any record evidence that Plaintiff asked that the previous ALJ decision be reopened. (See Doc. 17; AR). The Social Security Administration may reopen an agency determination within specified time limits after the date of the initial decision: twelve months as a matter of right and four years "upon a finding of good cause," which exists if new material evidence is provided or specific errors are discovered. 20 C.F.R. §§ 404.987-404.989, 416.1487-416.1489. Moreover, this Court lacks jurisdiction to order a case reopened or to review the denial of a request to reopen in the absence of a challenge based on constitutional grounds. Califano v. Sanders, 430 U.S. 99, 104-108 (1977). Accordingly, even had Plaintiff requested the agency to reopen the 2002 decision, this Court likely would not have been able to review his argument, had he made one.

1. Improper consideration of new evidence

Plaintiff first contends that the ALJ ignored the new evidence proving that he suffered from an additional ailment – depression – as well as documentation evidencing that his physical condition had worsened. (Doc. 17, pp. 5-6). According to Plaintiff, these records, especially those regarding his mental health, constitute new and material evidence because they were not considered by ALJ Haubner, but ALJ Ross did not recognize their importance because he had not view them in relation to ALJ Haubner's 2002 decision. (Id.). Plaintiff, therefore, asserts that these records were sufficient to rebut the presumption of continuing nondisability, rendering ALJ Ross' application of said presumption erroneous. (Id.).

An administrative decision denying disability benefits that the claimant does not appeal operates as res judicata as to the finding of nondisability through the date of the prior decision. Although applied less rigidly to administrative than to judicial proceedings, the principles of res judicata apply to administrative decisions. Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988); Gregory v. Bowen, 844 F.2d 664, 666 (9th Cir. 1988).

This binding determination of nondisability also creates a presumption of continuing nondisability with respect to the period after the date of the prior decision. See Lester v. Chater, 81 F.3d 821, 827 (9th Cir. 1995); Miller v. Heckler, 770 F.2d 845, 848 (9th Cir. 1985); Lyle v. Secretary of Health & Human Servs., 700 F.2d 566, 568-569 (9th Cir. 1983). The presumption does not apply, however, if there are "changed circumstances." Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir. 1985). Thus, the presumption may be overcome by a showing of "changed circumstances," such as new and material changes to the claimant's residual functional capacity ("RFC"), age, education, or work experience. Lester, 81 F.3d at 827-828 (9th Cir. 1995); Chavez, 844 F.2d at 693; Lyle, 700 F.2d at 568 n. 2. Accordingly, res judicata does not apply when the claimant raises an issue not considered in the previous decision, such as the existence of a new impairment, or demonstrates an increase in the severity of an impairment, either one of which adversely affects his RFC. Lester, 81 F.3d at 827 (citations omitted). Nor is it applicable when a change in the claimant's circumstances constitutes a categorical change under the Grids, such as a change in claimant's age category. Id., citing Chavez, 844 F.3d at 693.

Claimant's assertion that his depression is a new impairment arguably is faulty as a matter of fact given that, in the prior decision, the ALJ discussed a June 25, 2001 report prepared by examining psychiatric consultant Dr. Kenneth Gottlieb, who opined that any psychological disturbances suffered by Plaintiff were a component of his general pain disorder as opposed to disabling psychiatric problems. (See AR 34). In addition, Claimant fails to explain why treating psychiatrist Francisco E. Montalvo's April 2002 mental health evaluation, in which Dr. Montalvo reported that Claimant suffered from depression, or the March 2002 diagnostic test results, which similarly indicated symptoms of depression, anxiety, or schizoid personality disorders, apparently had not been submitted to ALJ Haubner for consideration. (See AR 230-246). To the extent that Claimant contends that both his depression and physical condition had worsened since the prior decision, however, ALJ Ross properly considered whether the alleged increase in the severity of Claimant's impairments constituted "changed circumstances" that would negate his obligation to apply res judicata to the prior decision. Lester, 81 F.3d at 827.

Here, ALJ Ross initially noted that, since June 29, 2002 – the day after the first decision was issued – the record was devoid of "any new or material evidence warranting a change in" Claimant's RFC and, accordingly, he would apply the presumption of continuing nondisability. (AR 16). With respect to Claimant's allegations of depression as a new ailment that limited his ability to work, ALJ Ross noted that treating psychiatrist Dr. Francisco Montalvo's April 2002 evaluation indicated that Claimant's moderate-to-severe depression resulted from his financial problems and worsening physical problems, adding that Claimant reported that psychotropic medications helped alleviate his symptoms. (AR 17; see AR 228-34). The ALJ also relied on the October 2003 and June 2004 evaluations by psychiatrist Dr. Bruce Kaldor, which were agreed to by the parties. Dr. Kaldor diagnosed Claimant with a depressive disorder not otherwise specified ("nos") and a pain disorder with both psychological factors and a general medical condition. (AR 17; see AR 416, 428-29). ALJ Ross noted that, during the June 2004 evaluation, Claimant reported that the only mental-health problem that Claimant believed would interfere with his ability to return to work was the anger induced by his physical pain. (AR 17, see AR 414). Based on Dr. Kaldor's findings that Claimant had only slight work-related limitations and, from a psychological standpoint, could return to his

usual employment, the ALJ concluded that Claimant's depression was not severe that his nonexertional impairments did not preclude him from performing a limited range of light work. (AR 18, 22). Assuming, without deciding, that Claimant provided sufficient evidence of a new or worsening mental-health impairment that would overcome the presumption of nondisability, ALJ Ross provided a detailed discussion of the records based upon which he concluded that Claimant's nonexertional impairment would not affect his RFC to the extent that he could not work at the level found in the prior decision. (AR 22).

With respect to Claimant's allegation that his physical ailments had become more severe over the years, as correctly found by ALJ Ross, the medical records indicated that Claimant's pain and range of motion had improved. (AR 18-20). The ALJ cited Claimant's reported alleviation of pain and muscle spasms following myobloc injections, the excision of mass that Claimant stated provided great relief and enabled him to move his neck, and noted that his treating physician released Claimant to work. (Id.). Based on the records, ALJ Ross again found, as had ALJ Haubner, that Claimant was able to perform a wide range of light work, limited by the inability to engage in repeated neck extensions or rotations. (AR 21). ALJ Ross, therefore, considered the new medical records but ultimately applied res judicata to the prior decision. (Compare AR 16-22 with AR 32-37).

2. Incorrect RFC assessment

Plaintiff further asserts that, because he is illiterate, unable to communicate in English, and a younger individual between 45-49 years old, who, contrary to the ALJ's determination, was limited to sedentary work, Rule 201.17 of the Medical-Vocational Guidelines ("Grids") dictates a finding of disability. (Doc. 17, pp. 5-6). The change in Plaintiff's age classification purported precludes the application of the presumption of nondisability set forth in Chavez, 844 F.2d 691. Alternatively, Plaintiff contends that a remand is required because ALJ Ross failed to consider Plaintiff's age change and illiteracy, and determined that the RFC assessment did not allow him to engage in the full range of light work. (Id.).

Pursuant to 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.00(h)(i), an individual who is between the ages of 45 and 49, is restricted to sedentary work, cannot return to his past relevant

work, and cannot communicate in English, should be deemed disabled. This is set forth as Rule 201.17 in Table No. 1, which, again, is limited to persons limited to sedentary work. In the instant case, ALJ Haubner's finding Claimant retained the RFC to perform light work with some restrictions was binding on ALJ Ross because there were no changed circumstances that adversely affected Claimant's RFC, as discussed above. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.00(h)(i), 201.17; Lester, 81 F.3d at 827-28; Chavez, 844 F.2d at 693; Lyle, 700 F.2d at 568 n. 2. Moreover, Claimant was only 43 years old when ALJ Ross issued his October 28, 2004, decision, and aged 44 by the time the Appeals Council denied review in May 2005. (AR 6-8, 16-22, 70, 433, 442). Contrary to Plaintiff's assertion, he had not reached age 45 at the time of the final administrative decision. (Doc. 17, pp. 5-6). It is, therefore, recommended that this claim be denied.

**B.     Improper Review and Application of the Mental Health Records**

Plaintiff next asserts that ALJ Ross relied on the records of Claimant's treating physician, Dr. Dinesh Sharma,[6] as well as his treating psychiatrist, Dr. Francisco Montalvo, only when their records reported that Claimant appeared to be improving, despite the doctors' numerous reports that Claimant's mental health was deteriorating. (Doc. 17, p. 6). Thus, the ALJ failed to comply with his obligation to consider the record as a whole, including the combined impact of all of Claimant's ailments. (Doc. 17, pp. 6-7). Plaintiff further contends that the ALJ only spent seven lines addressing treatment records that had not been considered by ALJ Haubner, and erroneously relied on opinions in which the consultant utilized Workers Compensation schedules, which schedules do not coincide with the criteria for disability under the Act. (Doc. 27, p. 7). By not calling a mental health expert or otherwise further developing the record, Claimant argues that the ALJ failed to comply with his obligation to develop the mental health record, necessitating a remand. (Id.).

Workers Compensation v. Social Security

In general, workers compensation disability ratings are not controlling in disability cases decided under the Social Security Act, and the terms of art used in the California workers

---

[6] The essence of Plaintiff's argument is that ALJ Ross did not properly consider and apply the mental health records evidencing his depression. (Doc. 17, pp. 6-7). It is not clear why Plaintiff mentioned Dr. Sharma, who treated him solely for his physical ailments and, to the extent he dealt with Plaintiff's psychological problems, referred him to Dr. Montalvo for what he summarily diagnosed as depression. (See AR 314-33).

compensation guidelines are not equivalent to Social Security disability terminology. See Macri v. Chater, 93 F.3d 540, 544 (9th Cir.1996); Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 576 (9th Cir.1988); 20 C.F.R. §§ 404.1504, 416.904. The differences between the tools for measuring disability under these schemes appears to be relevant only with respect to the physical capacity of the claimant. For example, under the California system, if one could lift 100 pounds pre-injury, but is restricted to "no heavy work" post-injury, then it is assumed that one retains 50% of prior lifting capacity or, in this example, 50 pounds. In other words, and in most cases, the post-injury lifting capacity is proportionately relative to the pre-injury capacity. See Administrative Director, State of California, "California Schedule for Rating Permanent Disabilities (April 1997)(the "California Schedule for Rating Permanent Disabilities"). In contrast, Social Security exertional levels are measured in absolute values, such that if the claimant can lift no more than 20 pounds, he is limited to light work. See 20 C.F.R. §§ 404.1567(b), 416.967(b).

In the instant case, examining psychiatric consultant Bruce Kaldor, M.D., evaluated nonexertional/non-physical impairments to ascertain the effect Claimant's depression might have on his ability to work, and determined that, from a mental-health standpoint, Claimant could return to his "usual and customary" job. (AR 417). The ALJ considered Dr. Kaldor's narrative in its entirety, not just the one page of conclusions that listed Claimant's slight and non-existent psychological impairments set forth in Workers Compensation parlance. (AR 17-18). The ALJ noted Dr. Kaldor's statement that Claimant could return to his past job and had no impairments that would preclude him from performing repetitive, simple tasks, as well as Claimant's statements that pain angered him and he wanted to work. (Id., see AR 411-30). Because ALJ Ross did not base Claimant's RFC on a report prepared for benefits under Workers Compensation, and relied on more than a few "check the box" statements when considering his nonexertional psychological impairments, there was no error.

Evaluate and Develop the Record

In a Social Security case, an ALJ is obligated to fully and fairly develop the record even if the claimant is represented by counsel. Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003). This duty may require that the ALJ obtain additional information by, inter alia, contacting treating physicians, scheduling consultative examinations, or calling a medical expert. 20 C.F.R. §§ 416.912(e)-(f),

13

416.919a; Armstrong v. Commissioner, 160 F.3d 587, 590 (9th Cir. 1998). The ALJ is not obligated to develop the record further, however, unless the evidence is ambiguous or "the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-460 (9th Cir. 2001).

In the instant case, the ALJ was not obligated to further develop the record with respect to Plaintiff's depression given that there were sufficient, unambiguous records to enable him to evaluate the evidence and render a proper decision. The administrative record includes records from Claimant's treating psychiatrist, Dr. Montalvo, which indicate that Claimant's had good and bad days, often dependant upon his pain and financial worries, but that he responded well to psychotropic medicine. (See AR 225-234, 392-411). Also included were diagnostic tests evidencing Claimant's tendency to magnify his ailments and either a refusal to cooperate or his misunderstanding of the exam questions. (AR 235-236). The record also contained opinions and evaluations from state physicians, treating physicians, and an agreed-upon independent psychiatrist. (AR 230-234, 265, 268, 405-409, 411-430). The ALJ reviewed the various records, including Claimant's disability forms, third party questionnaires, and statements he made to treating and consulting doctors, and found that Dr. Montalvo's assessment did not coincide with the treatment notes and, therefore, he did not accord the assessment a great deal of weight. (AR 17). Instead, ALJ Ross primarily relied on Dr. Kaldor's evaluations, which he found were consistent with Dr. Montalvo's progress reports, to conclude that Claimant's depression imposed, at the most, minimal effects on his ability to work. (AR 17-18, 22).   Given the plethora of straightforward documentation regarding Claimant's depression, the ALJ did not commit legal error when he failed to further develop Claimant's mental health record. Mayes, 276 F.3d at 459-460;

**C.    Treating Psychiatrist's Opinion**

Plaintiff further alleges that ALJ Ross did not provide "specific and legitimate" reasons, based on substantial evidence, for disregarding the opinion of treating psychiatrist Dr. Montalvo, although it was supported by the chart records. (Doc. 17, pp. 8-9). He further contends that the opinions of consultant Dr. Kaldor support Dr. Montalvo's opinion when considered in light of the treating records and after the Workers Compensation terms are translated to the equivalent Social

Security phrases.[7]  (Doc. 17, p. 9).

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. Reddick v. Chater, 157 F.3d 715, 725 (9th Cir.1998); Lester v. Chater, 81 F.3d at 830.  Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. Id.  Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. Id. (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983)).  This can be done by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989).  The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctor's, are correct. Embrey v. Bowen, 849 F.2d 418, 421-422 (9th Cir.1988).

In Orn v. Astrue, 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit reiterated and expounded upon its position regarding the ALJ's acceptance of the opinion of an examining physician over that of a treating physician.  "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not substantial evidence." Orn, 495 F.3d at 632 (citation and quotation omitted).  "By contrast, when an examining physician provides independent clinical findings that differ from the findings of the treating physician, such findings are substantial evidence." Id. (citation omitted). "Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and are supported by substantial evidence . . . or (2) findings based on objective medical tests that the treating physician has not herself considered." Id. (citations omitted).

If there is "substantial evidence" in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to "controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  In that event, the ALJ is instructed by §§ 404.1527(d)(2)

---

[7] This assertion is moot given the discussion of Workers' Compensation and Social Security terminology in Section B and, thus, will not be addressed.  Moreover, Claimant provides no support for this argument

and 416.927(d)(2) to consider the factors listed in §§ 404.1527(d)(2)-(6) and 416.927(d)(2)-(6) in determining what weight to accord the opinion of the treating physician. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), 416.927(d)(2)(i)-(ii). Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is "still entitled to deference." SSR 96-2p; Orn, 495 F.3d at 633. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." Orn, 495 F.3d at 633.

In the instant case, the ALJ determined that Claimant's depression was not severe, but only a slight impairment that did not have more than a minimal effect, if any, on his ability to engage in light work with restricted neck movements. (AR 17, 22). ALJ Ross based this decision on an April 2002 evaluation by Claimant's treating psychiatrist, Dr. Francisco Montalvo, Dr. Montalvo's progress reports through September 2002, and the October 2003 and June 2004 consultant's opinions provided by an agreed-upon psychiatrist, Dr. Bruce Kaldor. (AR 17-18). The ALJ did not reference Dr. Montalvo's notes for Claimant's visits from October 2002 through July 2004, and does not mention or explain any reason for rejecting Dr. Montalvo's 2004 assessment. (See AR 17-22, 225-27, 392-409). Because the ALJ does not discuss Dr. Montalvo's later evaluation, much less provide any reason for rejecting this treating doctor's opinion, it is recommended that the action be remanded for further consideration of Dr. Montalvo's 2004 opinion and otherwise to ensure that the ALJ comply with the requirements of Orn and the applicable administrate rules when evaluation the opinions of treating physicians. Orn, 495 F.3d at 633.

**D.   Credibility of Testimony**

Plaintiff contends that ALJ Ross failed to provide specific and convincing reasons for discounting his testimony. (Doc. 17, pp. 8-9). He further asserts that the ALJ misrepresented and misconstrued the record evidence in finding his testimony not wholly credible. (Id.).

A two step analysis applies at the administrative level when considering a claimant's subjective credibility. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant

16

must produce objective medical evidence of an impairment and show that the impairment could reasonably be expected to produce some degree of symptom. Id. at 1281-1282. If claimant satisfies this test – and if there is no evidence of malingering – the ALJ can reject the claimant's testimony about the severity of his or her symptoms "only by offering specific, clear and convincing reasons for doing so." Id. at 1281. Such specificity is crucial so as to enable effective judicial review. See Mersman v. Halter, 161 F. Supp. 2d 1078, 1086 (N.D. Cal. 2001)("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); SSR 96-7p (the ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight"). Thus, an ALJ's decision "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Lester v. Chater, 81 F.3d at 835. Grounds for an adverse credibility finding include, but are not limited to, inconsistencies either in the claimant's testimony or between the claimant's testimony and conduct, the claimant's daily activities and work record, the location, duration, frequency, and intensity of the claimant's pain or other symptoms, testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains, and the lack of adequate explanation for a claimant's failure to follow a prescribed course of treatment. See Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997); SSR 96-7p.

      Here, ALJ Ross discussed Plaintiff's physical and mental impairments and noted that he was required to consider "all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR §§ 404.1529 and 416.929, and Social Security Ruling 96-7p."[8]

---

[8] SSR 96-7p directs the ALJ to consider not only objective medical evidence, but also the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of her pain or other symptoms; (3) factors that precipitate or aggravate the symptoms; (4) the effectiveness and adverse side effects of prescribed medications; (5) other treatments for the relief pain and symptoms; (6) any other measures used by the individual to relieve the pain and symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions resulting from pain or other symptoms. SSR 96-7p.

(AR 19). The ALJ proceeded to discuss the record evidence, noting that Claimant reported that he felt better in February 2000 and had tried to return to work, but his limited range of motion and neck pain prevented him from doing his past job and the company had no other work for him. (AR 19-20). The ALJ gave credence to the results of Claimant's diagnostic psychological tests, which indicated that Claimant either failed to cooperate or misunderstood the directions, that he exaggerated his symptoms, and that his responses were so inconsistent that they rendered his profile invalid. (AR 19-20; see AR 235-36). In addition, ALJ Ross noted that, despite the alleged intensity, severity, and frequency of Claimant's pain, he had not been referred for treatment generally used to alleviate chronic pain syndrome, citing as examples biofeedback and use of a TENS unit. (AR 19). Moreover, although Claimant told one of his treating physicians that he was able to move his neck back and forth, he had fewer headaches, and he felt better after he underwent surgery in January 2004 to remove a soft-tissue mass, during the administrative hearing Claimant denied saying or meaning it to be understood as the doctor noted it in his progress reports. (AR 20, AR 349-52, 357-58, 449-50). The ALJ referenced several additional inconsistencies between Claimant's testimony and the administrative record. (AR 17-21).

It is sufficiently clear from the record that the ALJ's decision to discount Plaintiff's testimony was based on, inter alia, discrepancies between his testimony and the medical records, medical opinions, statements he made to physicians, his Social Security disability forms, and his reported daily activities, which were confirmed by third parties. See Light, 119 F.3d at 792; SSR 96-7p. The ALJ, therefore, provided clear and convincing reasons for discounting Plaintiff's subjective complaints of pain and limitations to the extent alleged, and these reasons were supported by substantial evidence in the record and were sufficiently specific to enable a reviewing court to conclude that the ALJ rejected Plaintiff's testimony on permissible grounds and did not arbitrarily discredit Plaintiff's testimony.

## CONCLUSION AND RECOMMENDATIONS

For the reasons discussed above, this Court finds error only with respect to the ALJ's failure to consider or otherwise evaluate the opinion of Claimant's treating psychiatrist. Otherwise, the ALJ

///

1  properly concluded that Claimant is not disabled, which decision is supported by substantial
2  evidence in the record as a whole and based on proper legal standards.
3         Accordingly, this Court RECOMMENDS:
4         1.  Plaintiff's Social Security complaint, (Doc. 1), BE GRANTED,
5         2.  Judgment BE ENTERED for Plaintiff Urbano Jimenez and against Defendant Michael J.
6  Astrue; and
7         3.  This matter BE REMANDED to Defendant, Michael J. Astrue, pursuant to Sentence Four
8  of 42 U.S.C. § 405(g), for further consideration of the weight and deference to be accorded
9  Plaintiff's treating psychiatrist, in accordance with Orn v. Astrue, 495 F.3d 625 (9th Cir. 2007).
10        These Findings and Recommendations are submitted to the United States District Judge
11 assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72-304.  No
12 later than fifteen (15) days after service of these Findings and Recommendations, any party may file
13 written objections to these Findings and Recommendations with the Court and serve a copy on all
14 parties and otherwise in compliance with this Court's Local Rule 72-304(b).  Such a document
15 should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Responses
16 to objections shall be filed and served no later than ten (10) court days after service of the objections
17 and otherwise in compliance with this Court's Local Rule 72-304(d).   The District Judge will review
18 the Magistrate Judge's Findings and Recommendations, pursuant to 28 U.S.C. § 636(b)(1)(C).  The
19 parties are advised that failure to file objections within the specified time may waive the right to
20 appeal the District Judge's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

22 IT IS SO ORDERED.
23 Dated:   **January 25, 2008**                                    /s/ Theresa A. Goldner
                                                              UNITED STATES MAGISTRATE JUDGE